IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHELLEY FLOYD                                                                                              PLAINTIFF


v.                                    CASE NO.        3:10-CV-03108


MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

The plaintiff filed her applications for DIB and SSI on January 15, 2008, alleging an onset date of January 1, 1988[1], due to plaintiff's Bipolar Disorder II, Obsessive Compulsive Disorder and Anxiety Disorder (T. 149). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on November 18, 2009 (T. 22-61). Plaintiff was present and represented by counsel.

---

[1] The Plaintiff orally moved to amend the onset date to June 30, 2008 at the hearing before the ALJ on November 18, 2009.

-1-

At the time of filing, plaintiff was 35 years of age and possessed a High School education. The Plaintiff had past relevant work ("PRW") experience as a Lab Assistant and Salesperson (T. 150).

On April 2, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's mental impairments did not meet or equal any Appendix 1 listing. (T. 12). The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that the Plaintiff could engage in sustained driving and could not climb ladder, scaffolds, and ropes and could only perform routine and repetitive jobs that have non-complex, simple instructions and involve few variable and little judgment and are learned by rote, have only superficial contact incidental to the work involved with the public and coworkers, and have concrete, direct and specific supervision. (T. 13). With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the work of a kitchen helper, laundry worker and inspector/hand packager. (T. 58-59).

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683

F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.     Applicable Facts**

The Plaintiff has an employment history that show she obtained substantial gainful activity only once between 1988 and 1999 but she did obtain substantial gainful activity five times during 2000-2009. (T. 128-129).

On October 24, 2006, Plaintiff had a psychiatric evaluation at Ozark Counseling Services (Tr. 196-198). Plaintiff complained of depression and mood swings (Tr. 196). Plaintiff also reported that her husband was verbally abusive (Tr. 196). The treating physician, R. Stephen Austin, M.D., reported that Plaintiff's psychomotor activity was within normal limits. Plaintiff denied auditory and visual hallucinations. She also denied suicidal and homicidal thoughts or plans. Dr. Austin reported that there was no flight of ideas, loosening of associations and no racing thoughts (Tr. 197); that Plaintiff had above average intelligence and that Plaintiff's memory for long-tern, short-term, and recall were within normal limits (Tr. 197). Dr. Austin reported that her attention span was only slightly decreased (Tr. 197). Dr. Austin diagnosed Plaintiff with Bipolar II Disorder, depression, Anxiety Disorder NOS, partner relational problems, and Borderline Personality Disorder (Tr. 197) and assessed her GAF at 48.[2] Dr. Austin prescribed Lamictal[3] for Plaintiff and recommended that she return in one month and continue to see Dr. Gaut for therapy (Tr. 198).

---

[2] A GAF of 41 to 50 indicates "Serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e .g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed.2000).

[3] Lamictal is used either alone or in combination with other medications to treat epileptic seizures in adults and children. Lamictal is also used to delay mood episodes in adults with bipolar disorder (manic depression). See www.drugs.com viewed December 21, 2011.

During follow up visits in November 2006, December 2006, and March 2007, Plaintiff requested a change in her medications because she felt that they were not working (Tr. 205-209). However in February 2007 (T. 210) Dr. Austin reported that the Plaintiff was doing well on her medications. In April 2007 the Plaintiff's GAF was still at 48 (T. 216) as it was in July 2007 (T. 219). As of July 2007 the Plaintiff's medications included Valium 10 mg, #90, 1 3x per day, Geodon[4] 40 mg, Zoloft[5] 100 mg 1 ½ in the morning and Lamictal 100 4 in the morning.  (Id.). In November 2007 the Plaintiff complained of "major hair loss" and "acne" and felt that her medications were not doing anything. (T. 226).  In December 2007 Seroquel[6] was added. (T. 222-223).  In January 2008 the Plaintiff was counseled regarding her misuse of "Benzos". (T. 228). The Plaintiff admitted to taking too many drugs and that she was so "over sedated that a friend had to drive her home." (T. 229).  As a result her prescription for clonazepam [7] was cancelled and she was to see Dr. Winslow on January 16, 2008. (Id.).  It does not appear that Dr. Winslow saw the Plaintiff but she did call into the clinic to tell them that she was "3 weeks to 3 months pregnant" and she wanted to know what drugs she needed to discontinue. (T. 230).  Dr. Winslow instructed that she needed to decrease the use of Xanax but the other drugs were OK.  It appears

---

[4] Geodon (ziprasidone) is an antipsychotic medication. It works by changing the effects of chemicals in the brain. Geodon is used to treat schizophrenia and the manic symptoms of bipolar disorder (manic depression) in adults and children who are at least 10 years old.  See www.drugs.com viewed January 11, 2012.

[5] Zoloft (sertraline) is used to treat depression, obsessive-compulsive disorder and panic and anxiety disorders.  See www.drugs.com viewed January 11, 2012.

[6] Seroquel (quetiapine) is an antipsychotic medicine. It works by changing the actions of chemicals in the brain. Seroquel is used to treat schizophrenia in adults and children who are at least 13 years old. It is also used to treat bipolar disorder (manic depression) in adults. See www.drugs.com viewed January 11, 2012.

[7] Clonazepam is in a group of drugs called benzodiazepines (ben-zoe-dye-AZE-eh-peens). It affects chemicals in the brain that may become unbalanced and cause anxiety. Clonazepam is used to treat seizure disorders or panic disorder.  See www.drugs.com  viewed December 21, 2011.

the clinic called her on January 21, 2008 and January 23, 2008 and left a message for the Plaintiff (Id.).  The records do not indicate that the Plaintiff had further contact with Ozark Counseling Services.

In March 2007 the Plaintiff saw Dr. Maxwell G. Cheney, M.D. (T. 189) for an abdominal pain and he continued to treat her through November, 2007.  In August she was prescribed Clamictal, Zoloft and Xanax. (Id.).  In September and October the medication was refilled but in November Dr. Cheney refused any additional refills until the Plaintiff was seen by him (T. 188).

On August 7, 2007 the Plaintiff was treated by Dr. Ray Stahl at the Baxter Regional Medical Center for right lower quadrant pain.  The Plaintiff acknowledged to Dr. Stahl that her present regimen of medication was "the best she has found so far and has felt the best but anger still is a problem, it is just not as frequent". (T. 192).  Dr. Stahl diagnosed the Plaintiff with Anger Syndrome and noted that she was in "dire need of help with this" (T. 193).  Dr. Stahl also noted that he had known the Plaintiff for "a long time" and that her problems were not related to her abdomen. (Id.).

On January 23, 2008 the Plaintiff filed for DIB and SSI. (T. 113-124).

On July 21, 2008 Stephen R. Harris, Ph.D., C.E.B.P. performed a mental diagnostic evaluation on Plaintiff (Tr. 241-245). Dr. Harris reported that Plaintiff had well organized thought processes under direct questioning (Tr. 242). He also reported that she was oriented times four (Tr. 243). Dr. Harris opined that Plaintiff was in the average range of intelligence (Tr. 243). Dr. Harris diagnosed Plaintiff with Bipolar Disorder, NOS, Borderline Personality Disorder

and he assigned her a Global Assessment Functioning Score of 52[8] (T. 244).

On July 24, 2008 Dr. Jerry R. Henderson performed a Mental RFC Assessment and found that the Plaintiff was able to "perform work where interpersonal contact in incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variable, little judgment; supervision required is simple, direct and concrete. (T. 250). Dr. Henderson did not find the Plaintiff to be Markedly Limited in any area of functioning. (Id.). Dr. Henderson also provided a Psychiatric Review Technique (T. 252- 262) on the same day which found the Plaintiff to have an Affective Disorder (T. 255) and a Personality Disorder (T. 259). . Dr. Henderson found the Plaintiff to have Mild limitations in her Activities of Daily Living, Moderate limitations in Maintaining Social Functioning and Concentration, Persistence, or Pace, and No Episodes of Decompensation of Extended Duration. (T. 262).

While instructed to do so, Dr. Henderson did not complete the Section "C" criteria of the listing. No explanation was given for his failure to complete this section.

On October 30, 2008 Dr. Jay Rankin reviewed the findings of Dr. Henderson and affirmed the findings as written. (T. 268).

**IV.    Discussion**:

The ALJ found that the Plaintiff had severe impairments of bipolar disorder, anxiety, and personality disorder citing 20 CFR 404.1520(c) and 416.920(c). The ALJ determined, however, that the Plaintiff did not" have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20

---

[8] A GAF score of 51 to 60 indicates "moderate symptoms ... OR moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 34.

CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926" (T. 12).

The ALJ determined that the Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot engage in sustained driving and cannot climb ladders, scaffolds, and ropes. The claimant can only perform routine and repetitive jobs that have noncomples, simple instruction, involve few variables and little judgment, are learned by rote, have only superficial contact incidental to the work involved with the public and coworkers, and have concrete, direct, and specific supervision. (T. 13).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245

F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The only RFC assessment of record was prepared by Jerry R. Henderson, a non-examining, consultative psychologist (T. 252-265) who found that the Plaintiff was "able to perform work where interpersonal contact is incidental to work performed" and that "supervision required is simple, direct and concrete" (T. 250). The court has stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement).

The Plaintiff was treated by Dr. Austin, a psychiatrist, from October 2006 until January 2008. (T. 196-229). Dr. Austin assessed the Plaintiff's GAF on October 26, 2006 at 48 and the record shows that she never improved even though she went through several different medications and counseling sessions. By assessing a GAF score of 48 it is clear that Dr. Austin felt that the Plaintiff had a "serious impairment". During that same time the Plaintiff's husband complained that his wife could not handle her anger (T. 205), that he wanted a divorce (T. 210), he separated from his wife (T. 213) and told Dr. Austin that his wife can't hold down a job, lays around all day, would not do anything around the house and that he thought his wife needed to be admitted to a hospital. (T. 214). The Plaintiff's husband ultimately abandoned the Plaintiff and

her daughter, the Plaintiff lost her home, and moved into an apartment with her daughter. Dr. Austin's treatment ends in January 2008 after the Plaintiff admitted abusing her drugs when she was so sedated she had to be driven home by a friend. (T. 229). Dr. Austin's office seems to have attempted to contact the Plaintiff on several occasions after that date but was unable to do so. (T. 230)

The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000). If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005)." *Johnson v. Astrue,* 627 F.3d 316, 319–20 (8th Cir.2010).

The ALJ acknowledged the records from Dr. Austin but stated that "the records from Ozark Counseling do not indicate any particular limitations on the claimant's ability to perform basic work activities caused by the claimant's impairments" (T. 14) but the ALJ did not request any opinion from the Plaintiff's treating psychiatrist concerning her ability to perform basic work activities. There is no evidence in the record that the Plaintiff was ever able to establish substantial gainful activity while she was being treated by Dr. Austin. She was unemployed at the time of the first visit (T. 196) and during 2007 the Plaintiff worked for two employers and earned only a total of $1,436.36 (T. 133) and she appears to have been fired from both of those jobs. (T.

56).

Instead of contacting the Plaintiff treating psychiatrist the ALJ arraigned for a consultive evaluation with a consulting psychologist, Dr. Harris, on July 21, 2008. (T. 241-245). While it is unclear exactly what test were administered to the Plaintiff Dr. Harris had a diagnosis of Bipolar Disorder, NOS, Borderline Personalty Disorder and a GAF of 52. Dr. Harris felt that the Plaintiff would have "difficulty in many social situation" and difficulty in performing work like tasks in an acceptable time frame. (T. 244).

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov. 3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. *Id*. Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001). Adding to these difficulties, individuals with chronic psychotic disorders often structure their lives in a way to minimize stress and reduce their signs and symptoms. *Id.* Given the sometimes competitive and stressful conditions in which people work, individuals with mental impairments "may be much more impaired for work than their signs and symptoms would indicate." *Id.; Obermeier*, 2008 WL 4831712, at *3. Worse yet, efforts to combat mental illness present their own unique difficulties. See Pate-Fires, 564 F.3d at 945. Individuals with mental illness often refuse to take their psychiatric medication-a symptom of the illness itself, rather than an example of willful noncompliance.

The Function Report completed by the Plaintiff's mother on October 18, 2008 stated that the Plaintiff gets her daughter up, ready and off to school and takes her to the bus, prepares her

meals, bath, reads to her and helps her with her studies (T. 170). This is somewhat consistent with the report by Dr. Harris in July 2008 (T. 244) however, the Plaintiff testified that her daughter did not require as much attention anymore. (T. 49-51). The court also notes that the Plaintiff's husband complained that his wife just laid around all day and would not do housework.

A claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment." *See Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir.1990) (*citing Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir.1989)). *Dixon v. Barnhart* 324 F.3d 997, 1002 (C.A.8 (Ark.),2003)

The court believes remand is necessary to further develop the record. Therefore, on remand, the ALJ is directed to contact plaintiff's treating doctor, Dr. Austin, and address interrogatories to that psychiatrist, asking him to review plaintiff's medical records during the relevant time period; to complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for his opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 0788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

V. **Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this 12th day of January 2012.

                                              /s/ J. Marschewski
                                         HONORABLE JAMES R. MARSCHEWSKI
                                         CHIEF UNITED STATES MAGISTRATE JUDGE